**In re Ray Blake SCALF, Lillian Jean Charlton Scalf, Individually and d/b/a Matt's Market and Deli, Debtors.**

**UNITED OIL MARKETERS, INC., Plaintiff,**

v.

**Ray Blake SCALF, Defendant.**

**Bankruptcy No. 3–86–00126.**
**Adv. No. 3–86–0067.**

United States Bankruptcy Court, E.D. Tennessee.

Sept. 2, 1986.

Brandt, Boarman, Vaughn & Beeson, Victor J. Vaughn, Johnson City, Tenn., for plaintiff.

Jerry S. Jones, Johnson City, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

This is an action to determine the dischargeability of a debt under Sections 523(a)(2)(A) and 523(a)(6), filed by the plaintiff, United Oil Marketers, Inc. against the debtor, Ray Blake Scalf.

I

Plaintiff is a corporation engaged in the business of selling gasoline and petroleum products at wholesale to various retailers for the purpose of resale.

On November 13, 1984, the plaintiff and the defendant and one of the defendant's sons entered into an agreement wherein the plaintiff would supply the defendant and his son, d/b/a Matt's Market and Deli, with gasoline for resale on open account. In May of 1985, the business was indebted to the plaintiff in the amount of $1,782.16 and on May 14, 1985, the parties entered into a written consignment agreement which provided in pertinent part:

(1) The Supplier [United Oil] agrees to furnish gasoline and the Operation [Ray Blake Scalf and Reggie Scalf] agrees to market said gasoline; however, the title to the gasoline shall be and remain in the Supplier until the same is sold and the funds received from the sale, which shall be the Supplier's, shall be remitted to Supplier as hereinafter set forth.

(2) The Operator shall read the gasoline meters each day, fill out a report showing the number of gallons sold and the amount of money collected for that day's business. The Operator shall pay over and deliver to the Supplier each Thursday, during the term of this Agreement, all monies collected for the sale of gasoline.

(3) The Operator shall receive for its services, one-half (½) of the profit for the sale of gasoline, diesel fuel and Kerosene sold each month. Profit to be defined using the traditional accounting method, example enclosed. Operator is indebted to Supplier in the principal sum of One Thousand, Seven Hundred Eighty Two and 16/100 ($1,782.16) Dollars and Supplier shall retain one-half (½) of the Operator's fee and apply the same to the payment of Operator's indebtedness until such time as the indebtedness is paid in full.

The agreement did not require that the funds derived from the sale of petroleum products be segregated or kept apart from the general receipts of the debtor from the sale of groceries and deli items. In practice, the defendant commingled funds from the sale of gasoline products with the funds received from the other operations. Plaintiff's agent knew the defendant was commingling funds. Defendant was not responsible for the day to day operations of the business. He had outside employment. Funds were kept in the cash register until they were deposited into the bank to the account of Matt's Market and Deli.

The undisputed proof was that the defendant put his life savings into the business and lost $34,000.00 of his own money in the operation. He mortgaged his home which he has now lost. He never at any time took any money from the operations of the business. Nor is there any proof to indicate that the defendant ever used any of the funds for his personal use.

The debtor's wife also had private employment. The defendant's son and wife were responsible for the day to day operation of the business.

On October 3, 1985, the defendant wrote a check to plaintiff in the amount of $5,142.37 for gasoline sold during the prior week. The check was returned for insufficient funds and the plaintiff alleges that the defendant knew the account was with-

out sufficient funds to cover the check and alleges that the sole reason the check was written was to fraudulently induce the plaintiff to continue making deliveries of gasoline products.

The proof, however, shows that the plaintiff believed there were sufficient funds in the bank account to cover the check. He was mistaken, however. The checking account was not used exclusively to pay plaintiff. It was used to pay all business debts.

Statements introduced by the plaintiff indicate that from the sales of gasoline during the month of May 1985, totaling $5,039.39, only $45.16 was paid to the defendant. The balance went to plaintiff to cover costs of sales, its share of profits, and to retire the obligation of $1,732.16 owing by defendant. During the month of June the defendant received only $239.40 from sales of $15,136.03. In July 1985, the defendant sold $16,016.51 in gasoline and received $422.28; August sales were $18,835.78 and defendant received $236.07; September sales were $29,491.30 and the defendant received nothing, plaintiff applying the entire amount due defendant, $653.96, to its receivable. Defendant deposited all checks received from the plaintiff into the account of Matt's Market and Deli to pay business expenses.

The proof indicated that 70% to 80% of Matt's Market and Deli's sales was gasoline. The inventory of groceries was approximately $2,200.00, a very small amount by any standards. Sometimes the defendant sold out of gasoline, thus being unable to generate any sales at all.

## II

Section 523(a)(2)(A) states that "A discharge ... does not discharge an individual debtor from any debt—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, ...."

Bankruptcy Rule 4005 requires the plaintiff to prove each and every element of its case. The plaintiff has failed to carry its burden as there is no proof to indicate that defendant was guilty of false pretenses, false representation or actual fraud.

Section 523(a)(6) states that "A discharge ... does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity;"

While it is clear that a debt arising from the unlawful conversion of the property of another is a willful and malicious injury within the meaning of Section 523(a)(6), it is equally clear that the section applies only to torts and not to contracts. As pointed out in 3 *Collier on Bankruptcy* ¶ 523.16[1] (15th ed. 1986), objections are to be construed liberally in favor of the debtor and strictly against the creditor and while a conversion of another's property without his knowledge or consent and done intentionally and without justification is grounds for an exception to a discharge, where there is at most a technical conversion the conversion may lack any element of willful and malicious intent required to sustain the objection. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328 (1934), held that a willful and malicious injury does not follow as a matter of course from every act of conversion. The court must consider all the facts and circumstances surrounding the alleged conversion and where there is a technical or innocent conversion the objection to dischargeability cannot be sustained.

The court is unable to find from the proof of this cause that defendant acted at any time without good faith in his dealings with the plaintiff.

Accordingly, the court will enter an order dismissing the plaintiff's objection.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.